UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
NORTHERN DIVISION
(at Covington)

| | |
|---|---|
| FRIEDA LOCKABY, Administratrix of the Estate of Randall Lockaby, et al., <br><br> Plaintiffs, <br><br> V. <br><br> CITY OF VILLA HILLS, et al., <br><br> Defendants. | Civil Action No. 2: 22-021-DCR <br><br> **MEMORANDUM OPINION AND ORDER** |

\*\*\* \*\*\* \*\*\* \*\*\*

Plaintiff Frieda Lockaby ("the plaintiff") filed this action on February 16, 2022, alleging a series of constitutional and state law violations stemming from the death of her husband Randall Lockaby ("Lockaby") which occurred during a traffic stop encounter with Officers Sean Dooley and Jacob Bolton of the City of Villa Hills Police Department ("VHPD"). [Record No. 1] Proceeding individually and as administratrix of Lockaby's estate, the plaintiff alleges, *inter alia*, that Dooley and Bolton used unconstitutionally excessive force when they shot Lockaby with their service weapons in response to Lockaby's brandishing his own handgun.

The defendants have filed a motion for sanctions pursuant to Rule 11(c)(2) of the Federal Rules of Civil Procedure, asserting that both factual and legal allegations of the Complaint fail to meet the standards provided in Rule 11(b). [Record No. 17] As set forth in further detail below, the defendants' motion has both procedural and merits-based deficiencies, precluding an award of sanctions. Accordingly, the motion will be denied.

- 1 -

## I. Relevant Background

The Complaint alleges that Officer Bolton initiated a traffic stop for Lockaby's speeding on the evening of February 20, 2021. Officer Dooley arrived on the scene at 22:57:21. [*Id.* at ¶¶ 11, 13.] After requesting and receiving Lockaby's driver's license and insurance, Bolton returned to his vehicle to perform a background check while Dooley conversed with Lockaby about, *inter alia*, a crime he committed five years prior. Dooley advised that Lockaby would only receive a warning for speeding. [*Id.* at ¶¶ 16-22.] Dooley also noted to Bolton that he had observed that Lockaby's wallet was full of money although he could not tell "whether [bills] were singles." [*Id.* at ¶ 17.]

The plaintiff asserts that, although Bolton returned Lockaby's license between 23:03:15 and 23:03:25, Dooley continued to question Lockaby. [*Id.* at ¶¶ 24-27.] Dooley then requested consent to search the vehicle at 23:03:43, which Lockaby denied. [*Id.* at ¶ 28.] He further commented on Lockaby's nervous behavior at 23:04:18, which Lockaby also denied. [*Id.* at ¶¶ 29-30.] At 23:04:28, Dooley stated, "You know what I do for a living . . . . I catch drug dealers and drug smugglers." [*Id.* at ¶ 33.] He then concluded that he "ha[d] enough to run his K-9 around Lockaby's vehicle" and directed Lockaby to exit the vehicle. [*Id.* at ¶ 34.]

The Complaint continues:

> Lockaby exit[ed] the vehicle. In one motion, with his right hand, Lockaby pulls a handgun from his back area and, in less than a second, points the gun up before pointing it down . . . . Observing the handgun, Officer Dooley slams the driver's side door on Lockaby's right side, and runs to the front of the vehicle while shooting several times at Lockaby . . . . Officer Bolten also fired at Lockaby . . . . Lockaby never discharged his handgun . . . . Lockaby was shot several times, and died from the wounds inflicted on him by the officers.

[*Id.* at ¶¶ 36-40.]

Based on these allegations, Count II of the Complaint asserts a claim under 42 U.S.C. § 1983 for "Excessive Force & Cruel & Unusual Punishment," in violation of the Fourth and Eighth Amendments. This claim is made against Defendants Bolton, Dooley, VHPD, and City of Villa Hills. [*Id.* at ¶¶ 71-82.] Count II includes the assertion that "[t]he VHPD officer's [*sic*] conduct was in excess of the scope of their authority for a routine traffic stop. The officers did not have the requisite probable cause necessary to exceed the scope of the traffic stop to conduct a search of the vehicle." [*Id.* at ¶ 74.]

The defendants filed a motion for sanctions pursuant to Rule 11(c)(2) on May 24, 2022. [Record No. 17] They assert that sanctions are appropriate for several reasons. First, the defendants argue that the officers' body camera footage refutes some of the plaintiff's factual allegations. Specifically, they claim this evidence demonstrates that: (1) "Lockaby is never once seen 'point[ing] the gun up before pointing it down'"; and (2) Lockaby actually pointed the gun at Officer Dooley. [*Id.* at p. 5.] The defendants have provided a still frame image taken from Dooley's body camera footage at 23:05:37 showing Lockaby pointing his gun at Dooley, who was only an arm's length away. [Record No. 17-3] In their estimation, these issues justify sanctions because counsel for the plaintiff did not plead accurate facts even though he was in possession of the body camera footage and used it to draft the Complaint (as evidenced by the body camera footage timestamps noted above). [Record No. 17, p. 5]

Relatedly, the defendants assert that the excessive force claim warrants Rule 11 sanctions because precedent from the United States Court of Appeals for the Sixth Circuit compels the legal conclusion that the officers used reasonable force because Lockaby pointed his gun at Dooley. [*Id.* at p. 5.] Finally, the motion faults the plaintiff for citing the circumstances of the traffic stop itself in pleading the excessive force claim where precedent

- 3 -

"separates alleged violations of the Fourth Amendment into segments and evaluates the constitutionality of each alleged violation independent of the others." [*Id.* at pp. 5-6.]

Defense counsel raised these issues in a March 23, 2022, letter to plaintiff's counsel, which was served by email that same date. It requests that the plaintiff withdraw the relevant allegations within 21 days. [Record No. 17-5] Importantly, this letter stated that defense counsel would "be forced to file a Motion for Sanctions under Rule 11" if the plaintiff did not comply with their demands. [*Id.* at p. 3.]

Plaintiff's counsel did not seek to withdraw these allegations, and the defendants proceeded to file the motion for sanctions. [Record No. 17, p. 6] The motion requests: "(1) dismissal of Plaintiff's excessive force claim and (2) an award of attorney fees and costs incurred in filing this Motion and defending this suit." [*Id.* at p. 8.] The plaintiff attempted to amend the Complaint to drop Count II on July 14, 2022. [*See* Record Nos. 25 and 26.] The plaintiff filed this amended pleading without leave, and the Court accordingly struck the submission during a motions hearing held that same date. [Record No. 27]

The Court heard arguments on the motion for sanctions during the July 14th hearing. Notably, the plaintiff argued that the disputed factual allegations were premised on a still frame of Dooley's body camera footage at 23:05:07 [Record No. 29-1] showing the decedent holding the handgun at a lower trajectory. The plaintiff also asserted that the Sixth Circuit recently articulated a list of factors to consider when evaluating excessive force claims based on shootings in *Palma v. Johns*, 27 F.4th 419 (6th Cir. 2022). One factor is "whether the officer could have diffused the situation with less forceful tactics," *id.* at 432, and the plaintiff believed that the alleged movement of Lockaby's gun downward could create a factual dispute on this

issue. Additionally, the defendants suggested that the entirety of Count II, as well as Count III (which alleges a claim for battery), should be dismissed for the reasons they had already stated.

The Court ultimately took the Rule 11 motion under advisement and directed defense counsel to file an affidavit detailing their claim for expenses and fees associated with the motion. [*Id.*] Defense counsel filed this affidavit on July 18, 2022, and it documents $6,601.00 in attorneys' fees incurred to prepare the motion and attend the July 14 hearing. [Record No. 28]

Thereafter, on July 19, 2022, the plaintiff filed a motion for leave to amend the Complaint. [Record Nos. 29] While that motion is not yet ripe for adjudication, the still frame referenced during the July 14 hearing is attached as an exhibit. [Record No. 29-1]

## II. Rule 11 Motion

### A. Legal Standard

Rule 11(b) states:

> By presenting to the court a pleading, written motion, or other paper — whether by signing, filing, submitting, or later advocating it — an attorney or unrepresented party certifies that to the best of the person's knowledge, information, and belief, formed after an inquiry reasonable under the circumstances: . . . .
>
> (2) the claims, defenses, and other legal contentions are warranted by existing law or by a nonfrivolous argument for extending, modifying, or reversing existing law or for establishing new law;
>
> (3) the factual contentions have evidentiary support or, if specifically so identified, will likely have evidentiary support after a reasonable opportunity for further investigation or discovery.

Fed. R. Civ. P. 11(b). "If, after notice and a reasonable opportunity to respond, the court determines that Rule 11(b) has been violated, the court may impose an appropriate sanction on any attorney, law firm, or party that violated the rule or is responsible for the violation." Fed.

R. Civ. P. 11(c)(1). "A sanction imposed under this rule must be limited to what suffices to deter repetition of the conduct or comparable conduct by others similarly situated." Fed. R. Civ. P. 11(c)(4).

"A motion for sanctions must be made separately from any other motion and must describe the specific conduct that allegedly violates Rule 11(b)." Fed. R. Civ. P. 11(c)(2). "The motion must be served under Rule 5, but it must not be filed or be presented to the court if the challenged paper, claim, defense, contention, or denial is withdrawn or appropriately corrected within 21 days after service or within another time the court sets." *Id.* In other words, "sanctions under Rule 11 are unavailable unless the motion for sanctions is served on the opposing party for the full twenty-one day 'safe harbor' period before it is filed with or presented to the court." *Ridder v. Cty. of Springfield*, 109 F.3d 288, 297 (6th Cir. 1997). "[T]he rule specifically requires formal service of a motion," which "definitionally excludes warning letters." *Penn, LLC v. Prosper Bus. Dev. Corp.*, 773 F.3d 764, 767 (6th Cir. 2014).

In the Sixth Circuit, the test for the imposition of Rule 11 sanctions is "whether the individual's conduct was reasonable under the circumstances." *Union Planters Bank v. L & J Dev. Co.*, 115 F.3d 378, 384 (6th Cir. 1997) (internal citations omitted). Whether sanctions are warranted is not determined in hindsight, but rather by examining counsel's conduct and reasonable beliefs when the pleading at issue was filed. *Mann v. G & G Mfg., Inc.*, 900 F.2d 953, 958 (6th Cir. 1990).

### B. Procedural Issues

The defendants' Rule 11 motion has procedural deficiencies. As noted, Rule 11(c)(2) requires formal service of the motion, not a warning letter, a full 21 days prior to its filing in Court. The Sixth Circuit has endorsed "strict compliance" with this procedural requirement,

which furthers the goals of "reduc[ing] Rule 11's volume, formaliz[ing] appropriate due process considerations of sanctions litigation, and diminish[ing] the rule's chilling effect." *Penn, LLC*, 773 F.3d at 767-68 (citation omitted); *accord Jodway v. Orlans, PC*, 759 F. App'x 374, 383-84 (6th Cir. 2018). "Permitting litigants to substitute warning letters, or other types of informal notice, for a motion timely served . . . undermines these goals." *Penn, LLC*, 773 F.3d at 767. From a practical standpoint, service of a Rule 11 warning letter also "prompts the recipient to guess at his opponent's seriousness" in contrast to service of an actual motion, which "unambiguously alerts the recipient that he must withdraw [a] contention within twenty-one days or defend it against the arguments raised in that motion." *Id.* (citing *Radcliffe v. Rainbow Constr. Co.*, 254 F.3d 772, 789 (9th Cir. 2001)).

The March 23, 2022, safe harbor letter is ostensibly a warning letter that threatens a formal motion if its demands are not met. The May 24, 2022, motion for sanctions relies exclusively on the warning letter to satisfy Rule 11(c)(2), and there is no indication that the motion itself was earlier served in accordance with the rule.[1] [*See* Record No. 17, pp. 6, 8.]

Moreover, even if one were to consider the warning letter adequate notice of the issues the defendants intended to present in a forthcoming motion, it would not provide such notice regarding issues they perceive as dispositive of claims other than the excessive force claim. For example, the letter does not mention Count III and offers no legal support for sanctions

---

[1] Neither party has specifically addressed the sufficiency of the March 23, 2022, safe harbor letter, and it is possible that the plaintiff has forfeited this issue. *See Darnell v. Arthur*, 782 F. App'x 413, 415-17 (6th Cir. 2019). On the other hand, the plaintiffs in *Jodway* failed to raise the same argument before the district court. 759 F. App'x at 383. The Sixth Circuit nonetheless reached the issue and found the award of monetary sanctions an abuse of discretion because the defendants clearly served a warning letter, rather than a motion, in contravention of Rule 11(c)(2) and *Penn, LLC*. *Id.* at 383-84. For these reasons, the Court considers this procedural issue as well as the merits of the defendants' Rule 11 motion.

regarding its battery claim, which is, of course, a common law tort rather than a claim asserting excessive force in violation of the Fourth Amendment. Thus, even if the defendants' letter complied with Rule 11(c)(2) for the purposes of their excessive force sanctions arguments, it would not do so for arguments concerning any other claim.

### C. Merits

Notwithstanding these procedural issues, the Court has considered the merits of the motion. As discussed below, neither the factual nor the legal arguments of the motion warrant sanctions at this stage of the case.

#### 1. Rule 11(b)(3) Factual Argument

Turning to the disputed factual allegations, Officer Dooley's body camera footage shows that Lockaby put his right hand behind his back (presumably grabbing a handgun located in his blue jeans) with his left arm at his side as he was getting out of his truck at 23:05:34. Between 23:05:34 and 23:05:35, he completed the action of exiting the truck, with both feet on the ground and his right hand remaining behind his back. Meanwhile, Dooley instructed him to "step right back here for me, my man" between 23:05:34 and 23:05:35. At 23:05:36, Lockaby responded, "I can't," and started pulling the gun from his pants. In the same second, Dooley asked, "What's that?"

At 23:05:37, Lockaby repeated, "I can't," simultaneously swinging the gun up and pointing it at Dooley. In the same second, Dooley appears to have reached out with his left hand.[2] This movement either: (1) physically forced the gun down; (2) made contact with the

---

[2] Officer Bolton was positioned behind the tailgate of Lockaby's truck during the relevant part of the encounter. The left-hand wall of the truck bed obscures some relevant details on Bolton's camera footage, *e.g.*, the position of Lockaby's handgun. However, it does show Dooley moving forward in a manner consistent with the reach described above.

- 8 -

open door of the truck, forcing Lockaby to bring the gun down; or (3) caused Lockaby to bring the gun down in anticipation of Dooley's reach. What exactly happened is not entirely clear from the footage, as the officer's physical reaction understandably altered his body camera's angle and Bolton's body camera footage is inconclusive. What is clear, however, is that Lockaby brought his left hand up toward the gun as he pointed it at Dooley and the officer reached forward with his own left hand.

That leads to the 23:05:37 still frames the parties have produced. The defendants' favored still frame shows Lockaby unambiguously pointing his handgun at Dooley. [Record No. 17-3] But it also shows Lockaby's left hand hovering mid-torso, approximately level with his handgun. When considered in the context of the video footage, this only supports an inference that the defendants' still frame documents the moment when Lockaby initially pointed the firearm at Dooley as the decedent's left hand was still rising toward the gun.

By contrast, the plaintiff's favored still frame shows the handgun pointed at a lower trajectory from that of the defendants' still frame. [Record No. 29-1] But this still frame also unambiguously shows Lockaby's left hand hovering over the handgun.

This demonstrates that the handgun was pointed downward. It also supports the inference that Lockaby had completed the action of bringing his left hand up toward the gun, meaning that this still frame captures a moment after that of the defendants' still frame.[3] Thus, the handgun was actually pointed up and then down, as indicated in the plaintiff's pleading.

---

[3] Notably, the plaintiff's still frame does not capture the position of Officer Dooley's left hand. Again, this is likely due to the fact that the officer was moving in a way that altered the camera angle.

Contrary to the defendants' argument, a careful review of the evidence reveals *some* support for the challenged factual allegations. See Fed. R. Civ. P. 11(b)(3).

And while the relevant factual allegations could have certainly been more specific, the same could be said of almost every complaint. When examined in the context of the video footage and still frames, the factual allegations are not so incomplete or misleading as to render them sanctionable. *Cf. Tahfs v. Proctor*, 316 F.3d 584, 594 (6th Cir. 2003) (Rule 11 sanctions were unwarranted where the plaintiff "failed to include more than bare, conclusory assertions in her complaint" but "did not fail [to satisfy federal pleading standards] by a wide margin.").

It is also worth noting that all of the actions at issue occurred within fractions of a single second, 23:05:37 according to Officer Dooley's body camera. Careful interpretation of the footage requires multiple viewings at a reduced speed. And such viewings do not completely illustrate every relevant action because: (1) the actions happened so quickly that they are difficult to discern even when viewed at a reduced speed; and (2) Dooley's body camera angle shifted.

Consideration of the still frames demonstrates that there is some evidence to support the factual allegations at issue. But even if that were not the case, the video evidence itself is not so conclusive as to render the Complaint's factual allegations sanctionable. Finally, the Court notes that this discussion of the relevant evidence should not be construed to impart any particular view of its legal significance, with the exception of the fact that it enables the plaintiff to make the nonfrivolous argument discussed in the next section of this opinion.

### 2. Rule 11(b)(2) Legal Arguments

Turning to the Rule 11(b)(2) arguments, the defendants first assert that the excessive force claim is sanctionable because Lockaby pointed the gun at Officer Dooley and "the only

conclusion the law supports is that Officers Dooley and Bolton acted reasonably and were justified in utilizing deadly force." [Record No. 17, p. 5] Next, they claim that the allegation concerning the legality of the traffic stop within Count II warrants sanctions because "the constitutionality of each alleged [Fourth Amendment] violation" must be considered independently. [*Id.* at pp. 5-6.]

Notably, the defendants fail to cite to any law in support of Rule 11 sanctions for these alleged violations other than the text of the rule itself. Indeed, the only case law they cite in their motion involves motions for summary judgment. [Record No. 17, pp. 1, n. 2, 3, n. 3, 4 n. 4] This is not surprising, as their Rule 11(b)(2) arguments are akin to those generally made in dispositive motions.

Consider the first argument. Certainly, there is support for the defendant's substantive legal contention that excessive force claims can fail as a matter of law when the decedent points a gun at an officer. *See, e.g., Jordan v. Howard*, 987 F.3d 537, 543-48 (6th Cir. 2021). But the plaintiff has also cited *Palma v. Johns*, which articulated a factor test concerning the excessive force inquiry in cases involving shootings. 27 F.4th at 432. And one factor considers "whether the officer could have diffused the situation with less forceful tactics." *Id.* Plaintiff's counsel believed that he had an arguable point concerning this factor, given the fact that Lockaby's gun moved downward.

If this issue were before the Court in a dispositive motion, it could merit substantive legal analysis. But at this juncture, it suffices to say that the relevant legal contention was "warranted by a *nonfrivolous* argument for extending, modifying, or reversing existing law" as required by Rule 11(b)(2). (emphasis added). This conclusion is consistent with the Sixth Circuit's admonishment that "Rule 11 'is not intended to chill an attorney's enthusiasm or

creativity in pursuing factual or legal theories.'" *Tahfs*, 316 F.3d at 595 (quoting *McGhee v. Sanilac Cnty.*, 934 F.2d 89, 92 (6th Cir. 1991)); *accord* Fed. R. Civ. P. 11 advisory committee's note to 1983 amendment (same); *James v. Caterpillar, Inc.*, 824 F. App'x 374, 378 (6th Cir. 2020) (same).

Relatedly, the Sixth Circuit has warned that "parties should not employ a Rule 11 motion 'to test the legal sufficiency or efficacy of allegations in the pleadings; other motions are available for those purposes.'" *James*, 824 F. App'x at 378 (quoting Fed. R. Civ. P. 11(b), (c) advisory committee's note to the 1993 amendment). While motions for Rule 11 sanctions may accompany dispositive motions, they generally "should not substitute for motions to dismiss or motions for summary judgment, which test the sufficiency of the complaint's allegations." *Id.* (citations omitted); *see also* 5A CHARLES ALAN WRIGHT & ARTHUR R. MILLER, FEDERAL PRACTICE AND PROCEDURE § 1336.3 (4th ed. 2020) ("Dismissals for frivolous actions ordinarily should be made under Rule 12(b)(6), and a Rule 11 sanction could be made in conjunction with a grant of that motion if the litigant's behavior was particularly egregious.").

As suggested above, the first legal argument merely tests the legal sufficiency or efficacy of the allegations contained in the Complaint. The same is true of the second argument, by which the defendants contend that the circumstances of the traffic stop itself cannot support the excessive claim. This would be a standard argument for a motion to dismiss.

And assuming the defendants are correct that the traffic stop circumstances are separable from those immediately preceding the shooting, it is worth noting that the excessive force claim does not appear to entirely rely on the circumstances of the traffic stop. In other

words, the defendants' success in testing the efficacy of this allegation would only narrow the scope of the excessive force claim, leaving the plaintiff able to raise other points (such as the *Palma* argument discussed above). Thus, the claim and the legal contentions contained therein were warranted by "a nonfrivolous argument for extending, modifying, or reversing existing law."

It is worth again repeating that the Court expresses no view on the ultimate viability of the parties' substantive legal arguments, and nothing in this opinion should be construed to limit the defendants' ability to raise these points later in this proceeding. However, sanctions for violations of Rule 11(b)(2) are not warranted based upon the discrete issue presented by the defendants' motion.

### III. Conclusion

In summary, the March 23, 2022 safe harbor letter is a warning letter that fails to meet the requirements of Rule 11(c)(2) of the Federal Rules of Civil Procedure. And even if it provided the requisite notice of the issues it raised, it would not provide notice concerning any claim other than the excessive force claim contained in Count II. Additionally, the evidence does not suggest that the disputed factual allegations are sanctionable, and Rule 11 sanctions are not appropriate in this case to address the legal underpinnings of the excessive force claim.

Accordingly, it is hereby

**ORDERED** that the defendants' motion for sanctions [Record No. 17] is **DENIED**.

Dated: August 5, 2022.

<u>Danny C. Reeves, Chief Judge</u>
United States District Court
Eastern District of Kentucky